The next case on the calendar is Schwab v. Lloyds Banking Group. I'm just waiting for the door to close. Good morning, Your Honors. My name is Tom Goldstein, and I represent the appellants. The last time this Court heard this case, it reversed the dismissal of the Libor plaintiff's suits on two grounds. The first is that the plaintiffs had properly alleged antitrust injury because the complaints alleged that the defendants, in conspiring to suppress Libor, intended to profit by paying less interest. And the second is that the plaintiffs had properly alleged an antitrust conspiracy. Judge Buchwald dismissed these complaints on two essential grounds as it comes to personal jurisdiction, and that is with respect to what we'll call the selling defendants, that the plaintiffs had not alleged that the defendants intended to profit by paying less interest but rather had just intended to make themselves look more financially sound. And then, with respect to the non-selling defendants, that we had not properly alleged a conspiracy. To us, this case on appeal is Groundhog Day. Those are the arguments that were presented and rejected the last time this Court heard the case. We have alleged that there is jurisdiction with respect to the selling defendants because we are in California. They marketed to us in California. We purchased in California products that were the subject of suppression of Libor. And that's a classic instance of the existence of personal jurisdiction. It's like the Bristol-Myers Squibb case with respect to the California plaintiffs. Who count as selling defendants here? Okay, this is just going to be a terminological question. When we talk about selling defendants, there are the parties to the Libor conspiracy, and they are the entities that sold Schwab directly or through Burbank dealers. Directly is the—oh, now, wait. Directly or indirect. So you're now referring to all ten of the banks that sold, as you put it, either directly or indirectly. Sure. What I'm trying to distinguish in selling and non-selling is that there are members of the conspiracy that Schwab didn't purchase from, either through the bank or the broker-dealer. So we agree that there is this question of what you do about the broker-dealers, but that's the universe that I'm trying to separate them into. And that is, either they're agent directly, that's how they sell. The bank doesn't happen to sell to— Selling defendants also are in two groups, right? The direct sellers and then through— Sure. Broker-dealers. Absolutely. Now, this wasn't, of course— The analysis is different for the two subsets. I think there's an additional question, certainly. It's not how the case was resolved below, but yes, there is an argument that's made now that says, well, you have to prove something different with respect to the subset of defendants that didn't sell to Schwab as the—the conspirator didn't sell to Schwab, but rather had a broker-dealer do it. Can I ask just about the selling defendants that sold directly? Sure. Where are the allegations in the complaint that they—that they marketed or intervened in California as opposed to the plaintiff simply purchasing? And I can get you the precise paragraph numbers, and I'm pleased to do that. When I come back up, I'll be able to give you— That would be very helpful, because I—because when I was looking at the complaint, there was a way of reading the complaint as there were many allegations that many, many instruments based on LIBOR were purchased in California, but very little in the complaint that says anything about conduct by the defendants in California. Sure. And I think it's probably very important to recognize kind of the history and why it is that the complaints are written this way. There have been two generations of the Schwab complaints, of course. The first Schwab complaints were filed. The defendants didn't make any arguments with respect to the lack of personal jurisdiction at all, and so there was no need to amend or add detail with respect to this question. The cases were dismissed on another ground. They were refiled in California. They were re-MDLed. At that point, the defendants moved to dismiss for lack of personal jurisdiction, but nothing to do with this. Instead, they made the kind of big picture on all grounds, you know, that with respect to any defendant, because what happened here was fundamentally in London, that's where the wrongful conduct occurred to them, and this is what Judge Balcoald agreed with, then the case was properly dismissed. So we have not yet been presented in the district court with the question that you are now raising, that Mr. Katyal has come into the case and has, you know, advanced a kind of more nuanced ground for dismissing some of the defendants for lack of personal jurisdiction. So we think one of two things will happen. You'll be satisfied with our allegations, or we'll be given the opportunity to amend, and with respect to that, we point to the court that we have in the context of what's known as LIBOR 6, as this case goes through a series of generations, and introduced a lot of detailing, you know, providing additional detail with respect to how it is these transactions occurred. There are all sorts of waiver and forfeiture arguments made by both sides in this case, and I was wondering whether we should take any of them as strictly as we might under other circumstances. As I read the litigation below and the opinion below, it looks as if this is not a case in which you have nothing else going on except that Schwab made this complaint, and then the district court analyzes the allegations of this complaint, and dismisses on grounds of lack of personal jurisdiction. It's not clear to me that the district court ever analyzed the allegations of this complaint, or that that was the way this was litigated at all. The opinion proceeds at a . . . it's not a criticism of the district court, flies at a pretty high altitude to the point where the parties had to decide and make some kind of stipulation as to what was dismissed and what wasn't dismissed, applying the very general principles that the district court adjudicated. And I'm wondering under that circumstance, you know, when it comes to should there have been a motion to amend or something like that, is that really realistic in this case? Well, it is in one very important respect. And so we sympathize, as the court has just suggested, with the district court being confronted with a lot of different complaints, a lot of different allegations. This is how the judge decided to manage it. We're not . . . you know, no criticism. What I don't think you can criticize us for is not having a version of a complaint that responds to a version of a dismissal argument that was never presented below. You can have whatever, you know, sympathy we want to have with respect to how the district judge managed all of the MDL cases. It's obviously very complex. My point is simply that the defendants did not move to dismiss on this ground. Therefore, we did not have the opportunity to amend the complaint and address them. That is, I think, a very fair thing to . . . a way to look at the case from our perspective. And that is, if you have a concern about the level of detail in our complaint, and we don't think you should, but if you were to, this is the ordinary case where a defendant would move to dismiss the case, and we would say, well, we can plead those jurisdictional allegations if you just give us a chance to. Our issue is that this argument was introduced on appeal. Is there a reason you couldn't have done that at the district court? After her decision, there's an analysis, both parties decide, pursuant to this analysis, you say there's no personal jurisdiction, but we could replete, but you didn't do that at that point. Because this argument wasn't made below. We didn't . . . I mean, it was very hard for us to anticipate that on appeal, the defendants would make this argument of differentiating between the different kinds of defendants and different kinds of transactions, which is . . . it comes to us when we get here. That's the only reason. I perfectly take the point that, say, hypothetically, that another set of plaintiffs had made a different set of allegations, and we could have seen this concern through some other part of the litigation. This just comes as a bolt from the blue, the idea that we don't have a sufficient amount of detail about the precise defendants or the precise kinds of transactions. Again, I do think the complaint is perfectly well pleaded and sufficiently so under Twombly and the like, but I would say it would be terribly unfair to allow the defendants to come here and say, well, you haven't distinguished, say, between the selling and non-selling, or the fixed and the variable rate, or the broker-dealers or not. This is just not how the case was litigated until we got here. With respect to the arguments that Judge Buchwald considered and that Judge Buchwald used to dismiss the case, those are the arguments that were made in Gelboim II and were rejected. That's why I think you see all of these new arguments by the defendants on appeal. They're trying to come up with some other way in light of this Court's intervening holding to justify the dismissal. JUSTICE BREYER. So I'm trying to understand what is your suggestion for what we do. Are you asking us to decide that the defendants are wrong about all these other issues, or just to say, well, what Judge Buchwald said as a basis for dismissal was incorrect? Thank you very much. Go back and now consider all these other arguments that the defendants have come up with. MR. WHITE. This is itself a little bit of a reprise of Gelboim II. The Court will recall that there was a reason for the judge having dismissed the case the first time around. The defendants argued as an alternative ground to affirm on the basis of a lack of conspiracy. So it's a similar sort of situation. The difference is that Judge Buchwald in that case had found an insufficiently pleaded conspiracy in an intervening district court opinion. That has not happened here. We would resolve the case this way. Take a look at the arguments that Judge Buchwald accepted. We don't think they can be reconciled with Gelboim II. Then take a look at the additional new arguments that are made by the defendants and test them against our complaint. If you find them insufficient, we don't think you should find the complaint insufficient, then you would say, well, the defendants have the . . . you can either reject . . . if the complaint is sufficient, then simply say the defendants are wrong on this complaint. But if you think that there is some merit to there being an insufficient amount of detail in the complaints, say the defendants can make this in front of Judge Buchwald and Judge Buchwald can consider whether we can properly amend. But you can't . . . I don't think you can affirm on a ground that we just didn't have an opportunity to address in our complaint. And what the greater detail would be about with respect to the so-called indirect sellers would be about the extent to which the broker-dealers acted as agents of the defendant banks. And with respect to the so-called direct sellers, there are questions with respect to Citibank, HSBC, and J.P. Morgan as to whether they are defined clearly enough in the complaint because each of those . . . all the allegations made about those entities are made about a dual entity . . . about two different entities. Yeah, I find this all fascinating in the appellee's brief, but it isn't at all what was the subject of the pleading below. We've had no opportunity to take any discovery on this question because we were dismissed and poured out of the case very early on. But yes, I recognize these are all very interesting questions. They are not questions that were put to Judge Buchwald. They were not questions that we could have moved to amend our complaint to address. We do think the affidavits that we've pointed to in our brief do provide a substantial amount of detail. But if these are real arguments, they're welcome to try and make them. And there's a separate pure argument that we really haven't gotten to, a pure argument of law about the way in which the existence of a conspiracy to manipulate LIBOR would or would not give personal jurisdiction in California over members of that conspiracy to manipulate LIBOR who did not directly or indirectly sell anything in California as far as we know. Sure. And so Judge Buchwald's found with respect to this that we hadn't pleaded a conspiracy. No, that's not right. So now we have the question of whether the Supreme Court's decisions in cases like Walden have undermined cases like Liscoe or other court of appeals decisions that recognize the existence of conspiracy jurisdiction. We think this is what's going on, not to unduly take up the court's time, but to just kind of encapsulate it. What has happened is that the defendants have taken cases that involve the question of whether it's a mere fortuity that the plaintiff ended up in the forum. So in Walden, what happens is the plaintiffs are at Atlanta Hartsfield, their money is taken, and then they go home to Nevada. In a case like Worldwide Volkswagen, you have somebody who drives the car out of the Northeast into Oklahoma. The court is concerned there that it has to be the defendant that, you know, their activity in the forum as opposed to the plaintiff, whatever the plaintiff goes off and does. And so what has happened here is sometimes does is that the appellees have seized on the definite article of the, because it happens to be a case involving a defendant. Those cases don't involve the very separate question of when you agree to enter into a conspiracy and it is a necessary overt act in furtherance of the conspiracy, it's perfectly obvious that Schwab is buying billions of dollars of these products in California. Particularly when the non-selling defendants are themselves selling billions of dollars in products in a related to, in closely related conduct into the forum. That nothing the Supreme Court has said would suggest that those conspirators are not subject to jurisdiction. One court can't evaluate the lawfulness of the conspiracy. Remember the upshot here. Can you go back to Lisco for a minute and explain why you think that is so good for you? Didn't Judge Friendly find there was no personal jurisdiction over someone who was both involved in the conspiracy and was a law partner of the person who was allowed to be sued? Well, sure, but the point there was that the argument for personal jurisdiction is that there was general jurisdiction with respect to a defendant. And you couldn't attach the conspirators and assert jurisdiction on that basis because general jurisdiction is the I think quite properly that the members of the conspiracy knew that there would be sales into California to somebody like Schwab who is, as I said, is buying billions of dollars of these products. It is not that the members of the conspiracy would anticipate being held into litigation in, say, Delaware, the home state of one of the selling defendants, but rather that there was an active engagement of the conspiracy of selling the products in California. And I would just caution the court of showing minimum contacts as to those conspirators who didn't sell. Well, it is an interesting question whether we would have to, but we certainly can. There is no dispute that the other members of the conspiracy in closely related conduct sold massive amounts of what we allege to be price fixed goods into the jurisdiction. It would be an interesting question if, say, you had a bank that had nothing to do with any sales to California, but that is not alleged to be the case here. All of the defendants we are engaged in this marketplace, in furtherance of the conspiracy, this becomes the easier, less close case than if you just had somebody who was completely distant. The only thing I was going to mention is that . . . I would ask those, I mean, are there any contacts alleged between California and those non-selling defendants? Yeah. I think that the . . . I believe the answer to that question is yes, because there is a general allegation that the conspirators are selling into California. If that were in there, and I will check the precise paragraph for you, it is only because of the situation that we described before, and that is this is a new and interesting argument that is raised on appeal. Do you want an opportunity to replete, to flesh that out? Yeah. I just don't think that is going to be much of a problem. These are major international banks. California is a massive market. It is not going to surprise anybody that they are selling, you know, they are borrowing money from people in California on a large scale. The thing that I was going to mention is that do recall, of course, that this theory of jurisdiction, which has been long accepted, is absolutely foundational to how it is that antitrust conspiracies are pursued in the United States, and to say that each conspirator has to have sold to a particular party in the jurisdiction would mean that these cases have to be litigated all over the country in a way that is relatively nonsensical and certainly doesn't comport with any concern about fairness and, you know, substantial justice. The idea that these major international banks would be subject to suit by Schwab buying $600 billion worth of LIBOR-priced fixed goods is not going to be a surprise to anybody. Thank you. Thank you, Judge Livingston. May I please the Court? The Supreme Court in Walden was clear that due process requires a defendant himself to be responsible for contacts with the forum and that the defendant's suit-related conduct must create a substantial connection with the state. Before you get into that, do you agree with Mr. Goldstein's description that these issues weren't litigated in the district court and have been being raised now for the first time? Heavens me, no, not at all. He called this a bolt from the blue. I don't think he is using that phrase correctly at all. So let me first just set out, I think there are essentially three baskets of defendants. One is the five alleged to be selling banks that sold securities, alleged to sell securities to Schwab in California. The second are five banks that are alleged to have sold through broker dealers. And then there's the remaining members who are only brought in because they're so-called conspirators or something like that. With respect to each of these, Your Honor, we were very clear. Starting with motion to dismiss, page 17, quote, generic allegations which identify no specific facts or any specific defendant are facially insufficient to justify personal jurisdiction. Then, with respect to basket one about whether or not they had alleged facts about selling, two important things. The motion to dismiss at page 13, quote, the fact that plaintiffs such as Schwab purchased securities through their California trading decks are not contacts created by defendants related to the plaintiff's cause of action that permit the exercise of specific jurisdiction. Then the reply brief at page six goes on about this. And Judge Livingston, when you asked him and you said, where is the site in the complaint for anything about marketing, he said he'll get it to you on reply. I'd be very interested in that because it's just nowhere in the complaint whatsoever. It is, however, in the declarations that he submitted after he lost this case in the district court in 2015 or 16, after the notice of appeal had been filed in this case. To be sure, those declarations say so, but that is way too little, far too late. He should have done exactly what the other plaintiffs did, like Darby. The Darby plaintiffs, after Judge Buchwald ruled, said, hey, I want a leave to amend, and they got that leave to amend their complaint. But what they did instead was ask for a final judgment by the district court and then run to this court, the Second Circuit, in an hour basically saying, oh, you didn't raise this below, but you know, and so on. If there was any ambiguity, and I'll give you the citations, Judge Chinn, to the other two baskets as well, but if there was any ambiguity, it sure seems to me it should have been resolved then. And by the way, this wasn't even their first motion to amend. They first filed a complaint. The judge then asked us, what are our defenses? In a docket number 601, we said right away, our defense is going to be personal jurisdiction, and we filed a 40-page brief, and those are the citations I am giving you to that brief now. And if that wasn't enough, they could have moved to amend then, but we filed a long brief about all of these different things. In response, by the way, to 27 — But what did the district court do with those various references in your brief? I don't read, and maybe I'm mistaken here, it is a very long opinion, I don't read the district court as adopting this theory that there are three different baskets, and here's what's wrong with the allegations as to this one, and here's what's wrong with the allegations as to that one, and here's what's wrong with the allegations as to the so-called conspirators at all. To be sure, Judge Lynch, I think that in this 400-page opinion, which I think was done with a lot of care, she didn't connect all the dots and left it for the parties, but I think that's my point, which is, if there was any ambiguity, it was up to them to do and say, hey, we want a motion to clarify, we want leave to amend the complaint, like the Darby plaintiffs. Instead, what they did is say, oh, no, we'll connect the dots for you, we lost everything. It's a final judgment. That was their argument before the district court, and then they came to the court of appeals, and now he wants leave to amend again? Well, but if what they're saying is, on the district court's principle, we lose. End of story. It wouldn't matter, would it? If the district court were correct, it wouldn't matter whether the direct sellers had marketed to California or Schwab just saw something that a Schwab person happens to be in Amsterdam and sees a billboard and decides to buy. It's not like that. Absolutely, Judge Lynch. We agree that you have to ask the question, was the district court's legal principle right on Walden and so on, and if it is right, then we think that it knocks out all three of these categories with the possible caveat about conspiracy, which we'll talk about later, which the judge, of course, did reach. But my only point to you is to not get distracted by this, oh, it wasn't raised below, give us another chance to amend and so on, because I think this court should decide this now, here at this moment in time, because it was teed up, the judge did rule on these issues, and I think it's absolutely fair game. Let's be very clear. What exactly are you saying the district court did rule on? I think the judge ruled on the fact that there was no jurisdiction with respect to, for example, the selling defendants, and once the judge did that, she also said there was no conspiracy jurisdiction and things like that. So I think with respect to those, and if I just could maybe just return to Judge Chin just to at least give you the citations to deal with and complete that question, and then we can go into the different baskets. With respect to the second basket about broker-dealers, if you look at the reply brief at pages 9 and 11 of our motion to dismiss, we go specifically through the non-party broker-dealer allegations that they've made and explain why they're not sufficient. And then with respect to conspiracy, at pages 15 and 16 of the brief and then at page 13 of the reply, we do the same thing. And by the way, this was a 40-page brief. We were given 40 pages to brief and dismiss 27 different sets of complaints, including the City of Philadelphia, the FDIC, Prudential, a whole bunch of different allegations, but I think that we did all of that and analyzed those. And so when you ask yourself, to return Judge Lynch to your question, which is does this basket 1, which is the selling defendants, which is I think their only halfway good argument and I think at the end of the day it's not close, does that comport with what the Supreme Court has said about due process and what this court has said in the Waldman decision? I think the answer is no. He asked the selling defendants. If it is the case that the selling defendants sent prospectuses into California with respect to certain securities that are affected by this conspiracy and someone in California purchased, there is not a specific jurisdiction to sue over that theory? So two things. Number one, as I was saying to Judge Livingston, this kind of marketing solicitation stuff is a new thing. Our brief at page 11 explains why it's not in the complaint. And number two, our point and Judge Buchwald's point is the only surviving claim on the merits is fraud about LIBOR-based manipulation. And according to their complaint, all of that took place in London. Now, I will grant you, Judge Lynch, if the claim were different, if, for example, as Judge Buchwald says at SPA page 141, if it was a failure to omit to provide information while they were selling securities, that could have taken place in California because after all Schaub was buying them there. The claim is the first part of the conspiracy is in London, the manipulation of LIBOR. But the second part of the conspiracy is taking those manipulated rates and then selling in California. So that's a different scenario. So again, as this case comes to the court, the only surviving claim is LIBOR-based manipulation. It's not wrongful omission or misrepresentation, those kinds of things. And as our brief at the end of the day, the conspiracy that we have said was sufficiently pled in our prior decision is that the banks, as sellers, colluded to depress LIBOR and then to increase costs, et cetera, et cetera, to raise their profits. It's not just manipulation. It's what you do with the money. First of all, and I know Judge Lynch is here, I don't actually think what my friend said about your decision in LIBOR, in Gelboim, is actually right. He said, quote, the court held that, quote, the defendants intended to profit by paying less interest. That's actually not in the opinion. Paying less interest isn't in there at all. Rather, the language was the allegations, quote, evince a common motive, singular, increased profits in the projection of financial soundness. And the footnote there with all the citations are about financial soundness. But be that as it may, our point to you is to say that the allegation here at the end of the day, conspiracy itself isn't some independent thing they're arguing. It's rather California-based fraud. And when you ask yourself either conspiracy to commit California-based fraud or the California-based direct fraud for basket one, the question is, what occurred in California with respect to those claims? And our brief at page 26 lays out the elements of California-based fraud. All of that stuff occurred in London, not here. And here's two ways of just testing that and understanding why this isn't, for example, a products liability claim or something like that. Ask yourself who they're complaining about. Their complaint at page A868 says, we're complaining about securities sold by Goldman. Not by these 18 defendants, but by someone else. And saying, we got hurt. It's fraud in California. Ask yourself the when question. What securities are they complaining about? Their complaint says, we're complaining about securities that were bought before any of the alleged manipulation took place. That is to say, this is a unique claim that they're making a cause of action. That cause of action is California-based fraud. And those specific elements occur in California. Now, if again, so saying to Judge Lynch, if it was a wrongful omission claim or something like that, that's different. I think there was a wrongful omission claim. Correct. There was. And could you tell me where exactly in the district court's opinion the district court rejected that claim on the merits? Yes. So between SPA 141 to 143, here's what she says. She says, wrongful omission claims in general could take place in California and give rise to jurisdiction. But the only kind of wrongful omission claim there is under California law is when there isn't an arm's length transaction. That is to say, when there's some special relationship like a swap transaction. And if Schwab had alleged that they were engaged in a swap transaction, by the way, like the plaintiffs, absolutely. That would be something in which they'd have a pretty good argument about jurisdiction because under this court's decision in Waldman, the elements of the offense, elements of the claim would have taken place in California. The problem is this is a unique cause of action. It's fraud based in California, based on the manipulation of LIBOR. And with respect to that, their own complaint says, hey, all this stuff took place in London, which is why their complaint is complaining about securities not sold by the 18 defendants and securities sold outside of the challenge period. If I could maybe spend a moment on conspiracy, because I know, Judge Lynch, that was something that you asked my friend on the other side. And I think there's a couple of things that are very important. I think, as you were picking up on, LISCO is the latest, Judge Friendly's decision is the latest in that. But even before that, Bertha Building and so on have made very clear that the presence of a conspirator is not enough to confer jurisdiction. And it would really, I think, really damage things and be in very much tension with Walden, which focused on the defendant himself, to say that the mere allegation of conspiracy is enough to create jurisdiction and certainly to create the substantial presence that the Supreme Court has required. Now, my friend says, oh, that's going to undermine law enforcement and all of that that's in his reply brief, citing a DOJ brief that they filed in Ohio. And the two things he doesn't tell you about that brief and that decision are, number one, that was the government's alternative argument. And number two, the court there said, we don't need to even buy that because there is no minimum context test in criminal cases at all. And as long as under the Frisbee case, a criminal defendant appears there, that's enough. The personal jurisdiction of individual defendants is basically transient jurisdiction and it's based on arrest or extradition. Correct. And in that case, by the way, it was even a corporate case. But that's what the judge said was a way to deal with that. So I don't really see any kind of dramatic impact. I think the lower courts in this circuit have been saying there is no conspiracy jurisdiction under allegations similar to these. And those are the citations in our brief. But I think our fundamental point, just to get back to it, is to say Walden and Waldman, the two W cases, they sound very similar, basically set out that it's the defendant himself that must be responsible for the substantial connections. And the test of that is to look to the elements of the claim. And the elements of this claim, as our brief lays out at page 56, all of those elements took place in London. There are other types of claims. Grantship, products liability, other things like that in which the cause of action and the behavior takes place in the forum, like my friend's invocation of Bristol Myers. But this is a unique allegation that's being levied against us and it's the only one that survives. And I understand that the district court has a long opinion, but at the end of the day, I thought she got it exactly right in basically accepting the arguments that we put forth and leaving it for the parties to connect a few dots. They connected those dots and say they lost. And I think that was for good  Can I just ask an additional question because I think I may be confused about something you said earlier. Were you saying that the district court dismissed on the merits any claim for fraud based on the failure to disclose LIBOR manipulation when selling the LIBOR based products? Because I thought that the dismissal, she dismissed the fixed rate instruments, but with regard to the floating rate instruments, that was still a live claim. So with respect to the floating rate instruments, you know, I think that the district court there did, you know, I think was saying that there was no essential loss causation because these securities are essentially kind of baked in. Right. Yeah. How about state law claims? And with respect to the state law claims, you know, I think with respect to the fixed law, the fixed rate ones, absolutely. She dismissed them as saying that there's no fraud on the market. This is essentially fraud on the market. They're complaining about buying, not buying certain securities, LIBOR based securities. And the floating rate claims? Exactly. So I think with respect to floating rate claims, I think she went on loss causation there. And but I think that they would be all thrown out on on on personal jurisdiction as well for the reasons I was saying to Judge Chin. All of those allegations at the end of the day are allegations about not having California based ties. Are there no other questions? Thank you, Your Honor. So with respect to the question of what representations are discussed in the complaint at page 868 of the complaint, there's a there's a general allegation in paragraph 21 of the complaint, but this is what's in paragraph 275, for example, that the instruments contain the misstatements or omissions of material fact with respect to the accuracy or integrity of LIBOR, which defendants made or caused to be made. And it goes forward from there. So there is, I think, a, you know, a distinct allegation. And this is no surprise that LIBOR was represented to be an accurate statement of their borrowing costs. That's the whole point of LIBOR. Now, my friend, I think his his strongest and most emphatic argument is that in their reply brief before the district court, they got into some there are sentences that you can pick out that represent greater detail about selling versus non-selling defendants. Well, the overarching point would be no matter what arguments they in fact made, any attempt to amend the complaints would have been entirely futile on the basis of Judge Buchwald's actual ruling. So I don't see how it is that one could say you passed up the chance to amend and therefore you have forfeited it. But I don't think that fairly read the defendants, albeit 40 pages long motion, did discuss these particular arguments in any kind of granular detail. And it is worth noting in terms of the practicalities of what's going on here that Mr. Cavial doesn't doubt that we can allege these things. His argument is in a kind of whack-a-mole way that the affidavits aren't what's reflected in the complaint. And the straightforward reason is that we didn't face this argument in any kind of timely way. If we want to be practical about the fact that they didn't move to dismiss for lack of personal jurisdiction the first time the complaint was going around, it's I think very hard to hold us to the idea that we should have made this futile motion to amend when it's clear that we can establish the relevant facts. Judge Livingston, you are correct about the claims that were dismissed versus weren't. The state law, common law fraud claims were not dismissed by the judge. They have nothing to do with loss causation, which is a federal securities doctrine. It was a lack of personal jurisdiction. And if one were to say here that the defendants conspired to manipulate LIBOR, they then sold us the products. We suffered a loss in California. They marketed it to us in California. We bought it in California. These are claims subject to California law. The idea that they are supposed to be litigated in the High Court of London is almost facetious. The entire place that anybody would expect this to be litigated would be in California. And with respect to the other conspirators, I don't think there's any doubt Mr. Katyal doesn't dispute that Judge Buchwald's reason for dismissing that part of the complaint was wrong. We have here a very different situation in which all the conspirators are selling into California on related conduct. If they want to make some further argument on remand, they're welcome to try and do that. Could you point me to the particular part of Judge Buchwald's opinion that made it clear to you that it would be futile to file your declarations earlier to move to leave to amend with regard to the selling defendants and those state law claims, the floating rate claims? Judge Buchwald's opinion dismisses, for a lack of personal jurisdiction, on the broad ground that the LIBOR manipulation ostensibly happened in London. And on that view, nothing that we have to say about the nature of the different defendants' activities makes any difference because her view is, as Mr. Katyal said, I know you bought it in California. I know maybe they marketed it to you there. I know you suffered the loss in California. But did I tell you they submitted this to Thomson Reuters in London? That is an expansive view of the defendant's ability to avoid personal jurisdiction in which none of these kinds of arguments make any difference. Thank you. Thank you both. Very well argued.